UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN BANGS,

                              Plaintiff,                      Case # 21-CV-6475-FPG

v.

                                                                      DECISION & ORDER

WALTER WILLIAM SMITH, JR., *Commissioner of
the New York State Board of Parole, in his individual
capacity,* et al.,

                              Defendants.
_____

## INTRODUCTION

Plaintiff Steven Bangs brings this civil rights action, alleging that officials at Gowanda Correctional Facility and the New York State Board of Parole violated his procedural due process rights in connection with the postponement of his expected release to parole. ECF No. 1. Defendants—Walter William Smith, Jr., Susan Kickbush, Kelly R. Vannote, and Mark Adams, all sued in their individual capacities—have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 10. Plaintiff opposes the motion, ECF No. 14, and Defendants have filed their reply. ECF No. 15. For the reasons that follow, Defendants' motion is GRANTED.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104

(2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## BACKGROUND

The Court will begin by summarizing New York's statutory and regulatory scheme related to parole and merit time allowances. Depending on the nature of the offense, an individual convicted of a crime under New York law may be sentenced to an "indeterminate" term of imprisonment. "An indeterminate sentence of imprisonment consists of a minimum period of imprisonment and a maximum term." *N.Y. Practice, Criminal Law* § 3:3 (4th ed.) (internal quotation marks omitted). Once a prisoner reaches the minimum term of his imprisonment, he may be "paroled from the institution" at the discretion of the state parole board. NY Penal Law § 70.40(1)(a)(i); *see also* N.Y. Exec. Law § 259-c. That discretion is guided by the parole board's regulations. Prior to a prisoner's minimum term, the parole board conducts an investigation and makes a decision regarding release. *See* 9 N.Y.C.R.R. § 8002.1, .2. If the parole board decides to grant parole release, a parole release date is set.

Before release occurs, the parole board may reconsider its determination, and a prisoner's release may be rescinded, under the procedures outlined in 9 N.Y.C.R.R. § 8002.5. That reconsideration process begins when a situation "come[s] to the attention of the senior parole officer . . . that there may be a basis for board reconsideration of a parole release date." *Id.* § 8002.5(b)(1), (2). The parole officer may temporarily suspend the inmate's release date at that time. Thereafter, the parole officer must notify the inmate of the suspension "as soon as practicable," must investigate the matter, and must then prepare a "rescission report" detailing his

2

or her investigation. *Id.* § 8002.5(b)(3). That report is submitted to a member of the parole board. Ordinarily, that board member must either (a) hold a rescission hearing or (b) reinstate the parole release date. *Id.* § 8002.5(b)(4)(i)-(ii). If a rescission hearing is to be held, the prisoner is entitled to a battery of procedural protections, including notice, a right to counsel, a right to cross-examine witnesses, a right to a written statement of the disposition, and a right to an administrative appeal. *Id.* § 8002.5(b)(5), (d)(3), (e). Under the regulations, the only circumstance in which the parole board may rescind the prisoner's parole release date without a hearing is if the prisoner has incurred a new indeterminate sentence or received a resentence that extends the minimum term of imprisonment beyond the "pre-existing minimum term." *Id.* § 8002.5(b)(2)(ii)(e), (4)(iii). In that case, the Parole Board must rescind the parole release date. No hearing is necessary, though written notice of the decision is sent to the prisoner. *Id.* § 8002.5(b)(4)(iii).

Although the parole board has the authority to decide whether an eligible prisoner may be released on parole, it does not have the authority to decide when a prisoner becomes eligible for parole. That authority is, in the first instance, vested in the sentencing court, which sets the prisoner's minimum term. N.Y. Penal Law § 70.00(1). The minimum term is not set in stone, however. State law provides several avenues for prisoners to receive "time allowances" that reduce the duration of their sentences. *See generally* N.Y. Corr. Law § 803.

At issue in this case is the "merit time allowance," *id.* § 803(1)(d)(i), which reduces a prisoner's minimum term by one-sixth if the prisoner "achieve[s] certain significant programmatic objectives, [does] not commit[] any serious disciplinary infractions and [does] not file[] any frivolous lawsuits." 7 N.Y.C.R.R. 280.1. This time allowance is treated as a "privilege" under state law, such that no prisoner "has the right to demand or require that any such allowance be

3

granted." *Id.*; *see also* N.Y. Corr. Law § 803(3), (4). The commissioner of New York's Department of Corrections and Community Supervision ("DOCCS") is vested with the authority to promulgate "rules and regulations" concerning merit time allowances. N.Y. Corr. Law § 803(3).

The process works as follows. Prior to the expected early release date, facility staff review the prisoner's records to determine whether he is satisfying the relevant criteria for a merit time allowance. 7 N.Y.C.R.R. §§ 280.2, 280.4(a)(1). A formal "merit time determination" is then made by the commissioner or his designee. *Id.* § 280.4(b)(1). An inmate granted the allowance is eligible for parole at the completion of his minimum term minus the merit time allowance, which the Court refers to as the "merit time release date." *See* N.Y. Penal Law § 70.40(1)(a)(i); 7 N.Y.C.R.R. § 280.5(a). The commissioner's or designee's merit time determination is treated as "final," except that a "merit time allowance may be revoked at any time prior to an inmate's release on parole if the inmate commits a serious disciplinary infraction or fails to continue to perform and pursue his or her assigned program plan or earned eligibility plan." 7 N.Y.C.R.R. § 280.4(b)(2), (4). The commissioner's regulations do not explain the process by which revocation decisions are made or the procedural protections, if any, an inmate is afforded during that process.

Plaintiff challenges the manner in which this process occurred in his case. The following facts are taken from the amended complaint, unless otherwise noted. On June 23, 2017, Plaintiff entered into DOCCS's custody to serve "an indeterminate term of imprisonment of 3-6 years." ECF No. 1 ¶¶ 7, 37. On August 5, 2018, DOCCS granted Plaintiff a merit time allowance based on his successful participation in vocational programming. *Id.* ¶ 38. On October 31, 2018, Plaintiff met with the parole board, which thereafter "granted an open date for [early] parole release" of March 13, 2019. *Id.* ¶ 40.

4

Shortly before his expected release, on February 6, 2019, Plaintiff received an inmate misbehavior report at Gowanda. At a February 10, 2019 hearing, Plaintiff pleaded guilty to one charge and was found guilty of three other charges. *Id.* ¶¶ 49, 51. Plaintiff received several penalties for his misconduct, including 30 days in "keeplock" confinement, during which Plaintiff was locked in his cell for "23 hours per day." *Id.* ¶ 52.

One consequence of the keeplock confinement was that Plaintiff could not attend his "pre-High School Equivalency" ("pre-HSE") program. *Id.* ¶ 54. To continue with his coursework, Plaintiff requested, and was permitted to participate in, a "Cell Study" program. Plaintiff alleges that the "Cell Study" program "provides instruction, tutoring services, and educational materials to inmates who are not in general population." ECF No. 1 ¶ 56. Plaintiff asserts that the "objectives and assessment process of Cell Study are the same as those for the regular, formal education programs," and that, while enrolled in the program during his keeplock confinement, he "diligently completed all pre-HSE assignments given to him by his pre-HSE teacher." *Id.* ¶ 57. Once released from keeplock confinement, Plaintiff "re-enrolled in the regular pre-HSE class at that time." *Id.* ¶ 58.

As a result of his keeplock confinement and temporary disenrollment from his pre-HSE program, DOCCS officials revoked Plaintiff's merit time allowance, and the parole board rescinded his merit time release date. Plaintiff claims that both actions violated his procedural due process rights.

As to the merit time allowance, Plaintiff alleges that on February 14, 2019—while he was still in keeplock confinement—Defendant Mark Adams, a supervising offender rehabilitation coordinator at Gowanda, ordered a subordinate to revoke Plaintiff's merit time allowance. On

February 21, 2019, Defendant Susan Kickbush, Gowanda's superintendent, signed a "Merit Time Determination Notice" that stated that Plaintiff's merit time allowance had been revoked due to "poor institutional behavior as it has impacted on your progress and participation and/or that of other inmates in programs." *Id.* ¶ 64. Plaintiff did not receive any notice, hearing, or other process before Kickbush revoked the merit time allowance.

As to the parole decision, on February 14, 2019, Defendant Kelly R. Vannote, another supervising offender rehabilitation coordinator, issued a "Notice of Temporary Suspension of Parole," which stated that suspension of the merit time release date was appropriate because Plaintiff had been "[r]emoved from a required Academic Program due to a KL status for a Tier 2 Infraction," which meant that he was "not in compliance with his" programmatic objectives. *Id.* ¶ 60. Vannote notified the parole board of the suspension and requested that the release decision be rescinded. On March 5, 2019, Defendant Walter William Smith, Jr., a parole commissioner, signed a "Board Rescission Decision Worksheet" rescinding Plaintiff's parole release. Plaintiff did not receive notice prior to the rescission, and he did not receive a hearing or any of the procedural protections set forth in Section 8002.5.

As a result of these developments, Plaintiff was not released on March 13, 2019. Plaintiff attempted to administratively appeal Smith's determination. When that failed, Plaintiff filed an Article 78 proceeding in state court against DOCCS and the parole board. After he filed the action, DOCCS restored Plaintiff's merit time allowance, and Plaintiff was released on parole on July 1, 2019. Plaintiff asserts that he was "unjustly incarcerated for 110 days past his March 13, 2019 release date." ECF No. 1 ¶ 83.

On July 7, 2021, Plaintiff, represented by counsel, filed the present action. He purports to raise one claim under 42 U.S.C. § 1983, alleging that Defendants violated his procedural due process rights. *Id.* ¶¶ 84-89. He requests damages and a declaratory judgment that "Defendants' conduct violated his constitutional due process rights." *Id.* at 13-14.

## DISCUSSION

Defendants move to dismiss the complaint on several grounds. Because it is dispositive, the Court need only address Defendants' argument that they are entitled to qualified immunity. *See DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012).

Before discussing the merits, however, the Court clarifies how it construes the complaint. Although Plaintiff's complaint lists a single claim for relief, the substance of Plaintiff's allegations suggests that he is challenging two distinct actions as violative of his procedural due process rights: first, the revocation of his merit time allowance, *see id.* ¶¶ 63-65, 88, and second, the rescission of his merit time release date, *id.* ¶¶ 60-62, 66-75, 87. The Court addresses each action separately.

### I.   Rescission of Merit Time Release Date

The Court first addresses Plaintiff's argument that Defendants violated his procedural due process rights by rescinding his merit time release date without a hearing.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (internal quotation marks omitted). "[S]tandard analysis under that provision proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of

7

which a person has been deprived, and if so [the court] ask[s] whether the procedures followed by the State were constitutionally sufficient." *Id.*

As to the first step, "[a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019). But "[s]tate law may create protected liberty interests" only in certain circumstances. *Hernandez v. Coughlin*, 18 F.3d 133, 137 (2d Cir. 1994). "The most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decisionmaking and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Rodriguez v. McLoughlin*, 214 F.3d 328, 338 (2d Cir. 2000) (internal quotation marks and ellipsis omitted).

As to the second step, "[i]n determining what process is due," courts "recognize that due process is flexible and calls for such procedural protections as the particular situation demands." *Francis*, 942 F.3d at 142 (internal quotation marks omitted). "To assess whether the government's procedures meet that flexible standard under a given set of circumstances," courts usually apply the "the three-factor analysis from *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Id.* (internal quotation marks omitted). In that analysis, a court considers: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* (internal quotation marks omitted).

8

In *Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016), the Second Circuit unequivocally held that a "parole grantee [who is imprisoned in New York] has a liberty interest in his open release date of which he may not be deprived without due process." *Victory*, 814 F.3d at 59. In that case, the plaintiff sued a number of state officials on the theory that his parole release date had been rescinded in a manner violative of his procedural due process rights. *See id.* at 52-58. He alleged that, after he had been granted parole, state officials had conspired to rescind his parole. *See id.* at 54-56. As part of that conspiracy, one of the parole commissioners falsely claimed that he had been unaware of the plaintiff's prior escape at the time he voted to grant parole, and on that basis a parole-rescission panel voted to rescind the plaintiff's parole. *See id.* at 56-57. The plaintiff argued that his due process rights had been violated in connection with the rescission hearing. The Second Circuit agreed that a parole grantee has a liberty interest in his open release date and is entitled to a "neutral and detached hearing body" that does not rely on fabricated evidence. *Id.* at 62-64.

In light of *Victory*, the Court accepts the proposition that Plaintiff possessed a liberty interest in his merit time release date once the parole board granted him parole after the October 2018 hearing. *See* ECF No. ¶ 40. As a general matter, Plaintiff could not be deprived of that interest without due process. *See Victory*, 814 F.3d at 59.

However, there is a complicating fact in Plaintiff's case that distinguishes it from *Victory*: Plaintiff's release on parole was barred by operation of law due to the revocation of his merit time allowance. Recall that the parole board is not empowered to determine when a prisoner is eligible to be released on parole. The sentencing court sets the terms of imprisonment, which the DOCCS commissioner may modify through certain statutory allowances, including merit time. *See* N.Y.

9

Corr. Law § 803. An inmate may not be paroled before the expiration of his minimum sentence, unless he receives a merit time allowance. *See* N.Y. Penal Law 70.40(1)(a)(i). It follows that if an inmate's merit time allowance is revoked, he may no longer be paroled prior to the expiration of his minimum sentence. *See id.* As the Fourth Department recently opined: when the commissioner revokes "merit time" and renders an inmate "*statutorily ineligible* for discretionary release to parole prior to the expiration of his minimum indeterminate sentence," the "statutory predicate for the [parole board's] previous grant of parole release on a date earlier than [the inmate's] minimum indeterminate sentence [is] eliminated by operation of law." *Matter of Lown v. Annucci*, 123 N.Y.S.3d 780, 783 (4th Dep't 2020). The parole board is not vested with any authority to modify or overturn the revocation of a merit time allowance; that power resides with the DOCCS commissioner. *See* N.Y. Corr. Law § 803(3), (4).

This complication may bear significantly on the due process analysis. As to the first step of the due process analysis, it is questionable whether Plaintiff can be said to have retained a liberty interest in his merit time release date once his allowance was revoked. Plaintiff's interest is, after all, one grounded in "New York's regulatory scheme," *Victory*, 814 F.3d at 60, and that scheme treats an inmate's merit time release date as conditioned upon the retention of his merit time allowance. *See Lown*, 123 N.Y.S.3d at 783 (concluding that inmate's interest in merit time release date was "contingent upon his remaining eligible for release on the date calculated by reducing his minimum sentence by a *granted* merit time allowance"). It could be argued that, once that condition was no longer fulfilled, Plaintiff's interest in his early merit time parole release date was extinguished. *See, e.g.*, *Greene v. McGuire*, 683 F.2d 32, 35 (2d Cir. 1982) (concluding that police officers' property interest in their jobs was conditioned on absence of felony conviction, such that

10

"once [the officers] were convicted—and the condition fulfilled—they lost their property interest"); *Lown*, 123 N.Y.S.3d at 783.

Even if the Court were to assume that Plaintiff retained a liberty interest in his merit time release date, despite becoming ineligible for parole by operation of law, it is unclear what process should be due under these circumstances. Plaintiff contends that he was entitled to a pre-deprivation hearing before the parole board, *see* ECF No. 14 at 18, but he fails to articulate what exactly the practical purpose of that hearing would be. By virtue of the revocation of his merit time allowance, Plaintiff was statutorily barred from being released on his merit time parole date. The postponement of his parole was an inevitability, regardless of any action taken by the parole board. Even if the commissioner's revocation were wrong or unlawful, the parole board did not have any authority to review it, let alone overturn it. Thus, any hearing before, or plea for relief to, the parole board "would have been a futility." *Carrasco v. Travis*, No. CA 2002-1743, 2002 WL 34340294, at *1 (N.Y. Sup. Ct. Nov. 7, 2002). Procedural due process only "calls for such procedural protections as the particular situation demands," *Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 191 (2d Cir. 2020), and the Court is skeptical that, under these circumstances, the due process clause would call for a hearing before a board that was without power to give Plaintiff any relief.[1] In the end, Plaintiff's dispute was with the DOCCS commissioner, not the parole board.

---

[1] Whether Plaintiff was entitled to a hearing under the parole board's regulations is immaterial to the Court's analysis. *See Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures.").

11

Regardless, the Court need not arrive at any definitive conclusion regarding the extent of Plaintiff's procedural due process rights in this context. It suffices to say that Plaintiff's right, if it exists, is not clearly established, and Defendants are therefore entitled to qualified immunity.

"The doctrine of qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted); *Hanrahan v. Doling*, 331 F.3d 93, 98 (2d Cir. 2003) ("The primary goal of qualified immunity is to permit government officials to act in areas of legal uncertainty without undue fear of subsequent liability."). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (internal quotation marks omitted).

To answer the question of whether a right was "clearly established" at the relevant time, a court in this Circuit considers whether "(1) the right was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Bailey v. Pataki*, 708 F.3d 391, 404-05 (2d Cir. 2013). "The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. Although case law does not require

12

a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Wills v. Microgenics Corp.*, No. 20-CV-4432, 2021 WL 3516419, at *4 (E.D.N.Y. Aug. 10, 2021) (internal quotation marks, brackets, and citations omitted). "In making this determination," a court in this Circuit considers "Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020).

This high bar makes claims of procedural due process "particularly fertile ground for qualified immunity." *Francis*, 942 F.3d at 149. Under the traditional balancing test set forth in *Mathews*, courts must "weigh three highly fact-bound considerations with respect to any potential procedural innovation that the parties might propose." *Id.* The effect of this "context-dependent approach" is that it will be "a rare case in which prior precedents have definitively resolved a novel claim of procedural due process." *Id.*

In this case, Plaintiff does not cite, and the Court cannot find, any Supreme Court or Second Circuit precedent that places the present constitutional question "beyond debate." *Wills*, 2021 WL 3516419, at *4. Plaintiff relies almost entirely on the Second Circuit's decision in *Victory*, *see* ECF No. 14 at 16-20, which only addresses the procedural due process rights of parole grantees generally. That is insufficient to clearly establish Plaintiff's procedural due process rights in this specific context, as rights "must be particularized to the facts of the case." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1090 (2d Cir. 2021) (internal quotation marks omitted). For the reasons just discussed, the facts of the present case are materially distinguishable from those in *Victory*, as they present unique issues related to the extent of Plaintiff's liberty interest and the process due to protect said interest. *See Walczyk v. Rio*, 496 F.3d 139, 166 (2d Cir. 2007) (Sotomayor, J.,

13

concurring) (stating that governmental official is entitled to qualified immunity if the "right at issue" has "been addressed only in a factual context that is distinguishable in a fair way from the present case" (internal quotation marks omitted)).

Consequently, absent binding precedent that clearly establishes a parole grantee's procedural due process rights before a parole board once he becomes statutorily ineligible for parole, the Court must grant qualified immunity to Defendants on this claim. Plaintiff's claim is dismissed with prejudice.[2]

## II.     Revocation of Merit Time Allowance

The Court also concludes that Defendants are entitled to qualified immunity on the claim relating to the revocation of Plaintiff's merit time allowance. This claim is governed by the same framework discussed above. The Court's analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so [the court] ask[s] whether the procedures followed by the State were constitutionally sufficient." *Victory*, 814 F.3d at 59.

The process due to prisoners in connection with decisions relating to their imprisonment, including sentence-reduction credits, has been a frequent source of litigation. One of the seminal cases in this context is *Wolff v. McDonnell*, 418 U.S. 539 (1974). There, the Supreme Court considered a Nebraska statute that granted prisoners good time credits. A prisoner's minimum and

---

[2] Plaintiff seeks both money damages and declaratory relief against Defendants. *See* ECF No. 1 at 13-14. Qualified immunity "protects government officials from suits brought against them in their individual capacity for money damages," *Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020), but it "does not protect a public official against a claim for declaratory or injunctive relief." *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013). In light of the dismissal of his request for money damages, however, Plaintiff may not proceed solely on a request for retrospective declaratory relief. *See Franza v. Stanford*, No. 18-CV-10892, 2019 WL 6729258, at *9 (S.D.N.Y. Dec. 11, 2019) ("[C]ourts generally hold that where public official defendants are shielded by absolute or qualified immunity, purely retrospective declaratory relief is inappropriate.").

maximum terms were reduced at regular intervals if the prisoner engaged in "good behavior and faithful performance of duties" during the relevant time period. *Wolff*, 418 U.S. at 546 n.6 ("The chief executive officers of a facility shall reduce . . . for good behavior and faithful performance of duties . . . the term of a committed offender . . . [t]wo months on the first year, two months on the second year, three months on the third year, four months for each succeeding year of his term . . . ."). Under state law, the chief executive officer of each penal facility was permitted to punish prisoners for misconduct by ordering the forfeiture or withholding of prisoners' good time credits. *Wolff*, 418 U.S. at 546-57. The question before the Court was whether the process provided to prisoners in connection with punishments involving the forfeiture of good-time credits was constitutionally sufficient.

The Supreme Court began by observing that, while "his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Id.* at 555. They may still "claim the protections of the Due Process Clause." *Id.* at 556. Concerning the first step in the due-process analysis, the court observed that Nebraska had created a "statutory right to good time" that could be forfeited "only for serious misbehavior." *Id.* at 557; *see also id.* at 546. Because state law limited the discretion of prison officials to withhold good time credits, and because those credits "affect[ed] the term of confinement," *Wolff*, 418 U.S. at 547, the court concluded that prisoners' interest in their *earned* good time credits was one of "real substance." *Id.* at 557; *see also id.* at 558 ("Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the

15

minimum requirements of procedural due process appropriate for the circumstances must be observed.").

The Supreme Court next analyzed the process due to prisoners facing the forfeiture or withholding of good-time credits for alleged misbehavior. It concluded that prisoners were entitled to various procedural protections prior to the forfeiture of good time credits for disciplinary reasons, including notice of the allegations, a right to call witnesses and present documentary evidence at the hearing, and entitlement to a written statement of the decision should disciplinary action be taken. *See Wolff*, 418 U.S. at 563-569.

At a high level of generality, *Wolff* stands for the proposition that "inmates have a liberty interest in good time credit they have already earned" and such interest merits several pre-deprivation procedural protections. *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (citing *Wolff*). But, as the analysis in *Wolff* itself makes clear, whether any particular statutory or regulatory scheme creates a protectible interest to benefits like good time credits is a question that "must be decided on a case-by-case basis." *Greenholtz v. Inmates of Neb. Penal & Corr'l Complex*, 442 U.S. 1, 12 (1979); *see Wolff*, 418 U.S. at 557. A liberty interest may not arise if, unlike the scheme at issue in *Wolff*, the statute at issue "is framed in discretionary terms." *Abed*, 209 F.3d at 67 (quoting another source); *see also id.* (holding that an inmate has no interest in the "opportunity to earn good time credit where . . . prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit").

In this case, Plaintiff argues that the "granting" of his merit time allowance is analogous to the "earning" of good time credits in *Wolff*, such that he has a liberty interest in his merit time allowance that is subject to the same due process protections. *See* ECF No. 14 at 11-13. In order

16

to determine whether New York's regulatory scheme confers on inmates a protectible entitlement in granted merit time allowances, the Court would need to analyze the language of the applicable statutes and regulations. *See Greenholtz*, 442 U.S. at 12. However, for purposes of qualified immunity, the Court need not conduct that analysis directly; the relevant question is whether existing Supreme Court or Second Circuit precedent establishes "beyond debate" that Plaintiff has a liberty interest in the merit time allowance he was granted pursuant to New York law. *Wills*, 2021 WL 3516419, at *4. Framed in those terms, qualified immunity must be granted. Plaintiff fails to cite, and the Court cannot find, any binding precedent expounding upon inmates' liberty interests in merit time allowances under New York law. *See, e.g.*, *Bock v. Gold*, 408 F. App'x 461, 463-64 (2d Cir. 2011) (summary order) (qualified immunity appropriate where "the plaintiff identifies no case in which a court has found that Vermont's conditional release program creates a constitutionally protected liberty interest on the prisoner's part in his or her conditional reentry status"); *Purnell v. Lord*, 952 F.2d 679, 685 (2d Cir. 1995) (granting qualified immunity "in light of the substantial doubt regarding the existence of a liberty interest under [certain prison] regulations"); *Wills*, 2021 WL 3516419, at *3-4 (where former inmate alleged a liberty interest in "certificate of earned eligibility" granted under New York law, finding qualified immunity appropriate because inmate "has not pointed to a case in which a court identified a due process violation involving the revocation of a certificate of earned eligibility").

To be sure, the Second Circuit has held that "[e]ven in the absence of binding precedent, a right is clearly established if the contours of the right are sufficiently clear that . . . the unlawfulness is apparent" or if the decisions "from this or other circuits clearly foreshadow a particular ruling on the issue." *Horn v. Stephenson*, 11 F.4th 163, 169 (2d Cir. 2021); *see, e.g.*, *Tellier v. Fields*,

17

280 F.3d 69, 84-85 (2d Cir. 2000) (denying qualified immunity because, "[e]ven though this Court had not ruled specifically that [the regulation at issue] created a protectable liberty interest prior to the alleged events in question, such a decision was clearly foreshadowed by our prior precedents" (internal citation and quotation marks omitted)). But the regulations at issue here do not so plainly create a liberty interest in granted merit time allowances as to make the need for due process protections apparent to a reasonable official.

On the one hand, several provisions of New York's merit time scheme could be read to communicate to an inmate that he has a protectible entitlement in a granted merit time allowance. New York law directs the DOCCS commissioner to promulgate regulations regarding the "granting" and "forfeiture" of merit time allowances. N.Y. Corr. Law § 803(3). Pursuant to that authority, the commissioner has promulgated detailed regulations on merit time allowances. 7 N.Y.C.R.R. § 280.1 states that merit time allowances are privileges to be "earned" through the commissioner's review process. 7 N.Y.C.R.R. § 280.1. Once a merit time determination is made, the determination is generally "final." *Id.* § 280.4(b)(2). If granted, the merit time allowance allows the inmate to appear before the parole board to determine whether he should be released on the merit time release date. *See id.* § 280.5(a). All of this suggests that, once granted the merit time allowance, the inmate has a "bird in the hand" and is not merely hoping for one "in the bush." *Victory*, 814 F.3d at 59. If the allowance were to be revoked, it could reasonably be seen as a loss to the inmate.[3] *Cf id.* at 59-60 ("[T]here is a human difference between losing what one has and not getting what one wants.").

---

[3] Especially in Plaintiff's case: the revocation of his merit time allowance caused the rescission of his release date.

On the other hand, some provisions in the scheme undercut that inference. Under state law, "[n]o person shall have the right to demand or require the allowances authorized by this section," and "[t]he decision of the commissioner of corrections and community supervision as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law." N.Y. Corr. Law § 803(4); *see also* 7 N.Y.C.R.R. § 280.1. The Second Circuit has stated that the "overall import" of these provisions is "to reinforce the discretionary nature of the commissioner's decision" regarding allowances authorized by statute. *Edwards v. Goord*, 362 F. App'x 195, 197 (2d Cir. 2010) (summary order) (discussing in context of good time credits). Furthermore, although the commissioner's determination is usually "final" once made, he retains the discretion to revoke a merit time allowance "any time prior to an inmate's release on parole" if the inmate "commits a serious disciplinary infraction or fails to continue to perform and pursue his or her assigned program plan or earned eligibility plan."[4]  7 N.Y.C.R.R. § 280.4(b)(4). These provisions suggest that the commissioner retains a significant degree of discretion over the "forfeiture" or "cancellation" of a merit time allowance until the inmate is released to parole, which may militate against the creation of a liberty interest. *See Abed*, 209 F.3d at 67.

---

[4] Plaintiff asserts that Section 280.4(b)(4) definitively limits the circumstances in which the commissioner may revoke a merit time allowance once granted, analogizing it to the Nebraska statute at issue in *Wolff*. *See* ECF No. 14 at 12-13. Plaintiff may ultimately be correct that the regulation should be interpreted in that manner, but his interpretation is not so obvious as to preclude qualified immunity. *Wolff* considered a state *statute* that limited the authority of prison officials to revoke good time credits, whereas New York's statute grants the commissioner wide discretion as to the "forfeiture" and "cancellation" of merit time allowances. *See* N.Y. Corr. Law § 803(3), (4). Although the commissioner has, pursuant to that statutory authority, promulgated regulations describing the manner in which such allowances would be granted and revoked, it is not clear that the regulations are intended to comprehensively delimit the parameters of the commissioner's discretion. For one thing, Section 280.4(b)(4) does not suggest that the commissioner may revoke a merit time allowance if an inmate is found to have filed a frivolous lawsuit, even though state law mandates that an allowance be withheld in that circumstance. *See id.* § 803(1)(d)(iv). Furthermore, the regulations do not detail how merit time allowances may be restored, even though the commissioner possesses that authority and used it in Plaintiff's case. *See id.* § 803(3), (4); *see also* ECF No. 1 ¶ 81.

Given the equivocal language of the applicable statutes and regulations, and the absence of binding precedent, the Court cannot conclude that it was clearly apparent that New York's merit time scheme conferred a liberty interest on inmates who were granted a merit time allowance. Therefore, Plaintiff's right to procedural due process was not clearly established at the time of the underlying events, and Defendants are entitled to qualified immunity. Plaintiff's request for declaratory relief with respect to this claim is unavailable for the same reasons discussed in note 2, *supra*. Therefore, this claim is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 10) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: May 26, 2022
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York